UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x

Judge Hellerstein

**05 CV      9426**

SILVERSTEIN PROPERTIES, INC., WORLD
TRADE CENTER PROPERTIES LLC, THE
PORT AUTHORITY OF NEW YORK AND
NEW JERSEY, THE CITY OF NEW YORK,
TULLY CONSTRUCTION CO., INC., TULLY
INDUSTRIES, INC., HUDSON TOWERS
HOUSING CO. INC., LEFRAK
ORGANIZATION, INC., LOGANY, LLC,
DEUTSCHE BANK TRUST COMPANY
AMERICAS, f/k/a BANKERS TRUST
COMPANY, and DEUTSCHE BANK TRUST
CORPORATION, f/k/a BANKERS TRUST
CORPORATION and BANKERS TRUST NEW
YORK CORPORATION,

        Plaintiffs,

      -against-

ROLANDO ALVAREZ, KIRK ARSENAULT,
ANTHONY BUONAMINI, JOHN CAMPO,
ALEJANDRO CARPIO, MANUEL CHECO,
ROMUALD CIESLAK, KEVIN DALY,
ABRAHAM FERGUS, LUCYNA FOREMSKA,
PAUL JOHNSON, MARITZA LIRIANO,
SANDRA MILLING, JOHN MONTALVO,
JOHN NIMMO III, FRANCIS PAUL PURSLEY,
RICHARD RACIOPPI, ALEX ANTHONY
SANCHEZ, SALVATORE SFERRAZZA,
JOSEPH M. URSO, RAFAEL VALDEZ, and
ROSA VIVAR,

        Defendants.

------------------------------------------------------------ x

05 CV                    (AKH)

**COMPLAINT SEEKING
<u>DECLARATORY JUDGMENT</u>**



RECEIVED
NOV 07 2005
U.S.D.C. S.D.N.Y.
CASHIERS

Plaintiffs Silverstein Properties, Inc., World Trade Center Properties, LLC and the Port

Authority of New York and New Jersey, by their attorneys, Flemming Zulack Williamson

Zauderer LLP, plaintiff The City of New York, by its attorneys Latham & Watkins, LLP,

plaintiffs Tully Construction Co., Inc. and Tully Industries, Inc., by their attorneys, Mound

Cotton Wollan & Greengrass (as to defendants Arsenault and Racioppi) and Malapero & Prisco, LLP (as to defendant Johnson), plaintiffs Hudson Towers Housing Co., Inc. and Lefrak Organization, Inc., by their attorneys, Harris Beach, PLLC,  plaintiff Logany, LLC, by its attorneys, McGivney and Kluger, P.C., and plaintiffs Deutsche Bank Trust Company Americas (f/k/a Bankers Trust Company and ) and Deutsche Bank Trust Corporation (f/k/a Bankers Trust Corporation and Bankers Trust New York Corporation), by their attorneys, Pitney Hardin LLP, (collectively, the "Plaintiffs") for their complaint seeking a declaratory judgment against defendants Rolando Alvarez, Kirk Arsenault, Anthony Buonomini, John Campo, Alejandro Carpio, Manuel Checo, Romuald Cieslak, Kevin Daly, Abraham Fergus, Lucyna Foremska, Paul Johnson, Maritza Liriano, Sandra Milling, John Montalvo, John Nimmo III, Francis Paul Pursley, Richard Racioppi, Alex Anthony Sanchez, Salvatore Sferrazza, Joseph M. Urso, Rafael Valdez, and Rosa Vivar (collectively, the "Defendants"), hereby allege as follows:

## NATURE OF THE ACTION

1.      In this action, Plaintiffs seek a declaratory judgment declaring that (a) any claims for relief held by any of the Defendants against any of the Plaintiffs, each claim of which arises out of, results from or relates to the terrorist aircraft crashes of September 11, 2001, consist solely of the exclusive federal cause of action created by § 408(b)(1) of the Air Transportation Safety and System Stabilization Act of 2001 (the "ATSSSA"), Pub. L. No. 107-42, 115 Stat. 230 (2001) (codified as amended, at 49 U.S.C. § 40101 note), and (b) pursuant to § 408(b)(3) of the ATSSSA, any such claims for relief held by any of the Defendants against any of the Plaintiffs are subject to the original and exclusive jurisdiction of this Court.

2.      This action is brought pursuant to the authority to seek such a declaratory judgment provided by 28 U.S.C. § 2201.

## SUBJECT MATTER JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over this declaratory judgment action pursuant to 28 U.S.C. § 1331.

4.      Venue of this action is properly laid in the Southern District of New York pursuant to 28 U.S.C. §§ 1391(b) and (c).

## THE PARTIES

5.      At all relevant times, plaintiff Silverstein Properties, Inc. ("SPI") was and is a domestic corporation duly organized and existing under the laws of the State of New York, with its principal place of business located in the County and State of New York.

6.      At all relevant times, plaintiff World Trade Center Properties LLC ("World Trade Center Properties") was and is a domestic limited liability company duly organized and existing under the laws of the State of New York, with its principal place of business located in the County and State of New York.

7.      At all relevant times, plaintiff The Port Authority of New York and New Jersey ("the Port Authority") was and is a body corporate and politic, existing by virtue of a Compact between the States of New York and New Jersey with the consent of the United States Congress.

8.      At all relevant times, plaintiff The City of New York (the "City") was and is a municipal corporation duly organized and existing under the laws of the State of New York.

9.      At all relevant times, plaintiff Tully Construction Co., Inc. ("Tully Construction") was and is a domestic corporation duly organized and existing under the laws of the State of New York, with its principal place of business located in the County of Queens, State of New York.

10.     At all relevant times, plaintiff Tully Industries, Inc. ("Tully Industries") was and is a domestic corporation duly organized and existing under the laws of the State of New York, with its principal place of business located in County of Queens, State of New York.

11.     At all relevant times, plaintiff Hudson Towers Housing Co., Inc. ("Hudson Towers") was and is a domestic corporation duly organized and existing under the laws of the State of New York, with its principal place of business located in the County and State of New York.

12.     At all relevant times, plaintiff The Lefrak Organization, Inc. ("Lefrak") was and is a domestic corporation duly organized and existing under the laws of the State of New York, with its principal place of business located in the County and State of New York.

13.     At all relevant times, plaintiff Logany, LLC ("Logany") was and is a domestic limited liability corporation duly organized and existing under the laws of the State of New York, with its principal place of business located in New York.

14.     At all relevant times, plaintiff Deutsche Bank Trust Company Americas, formerly known as Bankers Trust Company ("Deutsche Bank Americas"), was and is a domestic corporation organized and existing under the laws of the State of New York, with its principal place of business located in New York, New York.

15.     At all relevant times, plaintiff Deutsche Bank Trust Corporation, formerly known as Bankers Trust Corporation and Bankers Trust New York Corporation ("Deutsche Bank Trust"), was and is a domestic corporation duly organized and existing under the laws of the State of New York, with its principal place of business located in New York, New York.

16.     Defendant Rolando Alvarez ("defendant Alvarez") is subject to the personal jurisdiction of this Court because, *inter alia*, he has availed himself of the Courts of the County and State of New York.

17.     Defendant Kirk Arsenault ("defendant Arsenault") is a resident of the State of Massachusetts and is subject to the personal jurisdiction of this Court because, *inter alia*, he has availed himself of this Court by commencing an action herein.

18.     Defendant Anthony Buonomini ("defendant Buonomini") is subject to the personal jurisdiction of this Court because, *inter alia*, he has availed himself of the Courts of the State and County of New York.

19.     Defendant John Campo ("defendant Campo") is subject to the personal jurisdiction of this Court because, *inter alia*, he has availed himself of the Courts of the State and County of New York.

20.     At all relevant times, defendant Alejandro Carpio ("defendant Carpio") is subject to the personal jurisdiction of this Court because, *inter alia*, he has availed himself of the Courts of the County and State of New York.

21.     At all relevant times, defendant Manuel Checo ("defendant Checo") was a resident of City, County and State of New York.

22.     At all relevant times, defendant Romuald Cieslak ("defendant Cieslak") was a resident of Glendale, New York.  Defendant Cieslak is subject to the personal jurisdiction of this Court because, *inter alia*, he has availed himself of the Courts of the State and County of New York.

23.     At all relevant times, defendant Kevin Daly ("defendant Daly") was a resident of Middle Island, New York.  Defendant Daly is subject to the personal jurisdiction of this Court because, *inter alia*, he has availed himself of the Courts of the State and County of New York.

24.     At all relevant times, defendant Abraham Fergus ("defendant Fergus") was a resident of Bronx, New York.  Defendant Fergus is subject to the personal jurisdiction of this

Court because, *inter alia*, he has availed himself of the Courts of the State and County of New York.

25.    At all relevant times, defendant Lucyna Foremska ("defendant Foremska") was a resident of Brooklyn, New York.

26.    Defendant Foremska is subject to the personal jurisdiction of this Court because, *inter alia*, she has availed himself of this Court by commencing an action herein.

27.    At all relevant times, defendant Paul Johnson ("defendant Johnson") was a resident of Lindenhurst, New York.  Defendant Johnson is subject to the personal jurisdiction of this Court because, *inter alia*, he has availed himself of the Courts of the State and County of New York.

28.    At all relevant times, defendant Maritza Liriano ("defendant Liriano") was a resident of the City, County and State of New York.  Defendant Liriano is subject to the personal jurisdiction of this Court for the additional reason that she has availed himself of the Courts of the State of New York.

29.    Defendant Sandra Milling ("defendant Milling") is subject to the personal jurisdiction of this Court because, *inter alia*, he has availed himself of the Courts of the State and County of New York.

30.    At all relevant times, defendant John Montalvo ("defendant Montalvo") was a resident of Brooklyn, New York.  Defendant Montalvo is subject to the personal jurisdiction of this Court for the additional reason that she has availed himself of the Courts of the State and County of New York.

31.    At all relevant times, defendant John Nimmo III ("defendant Nimmo") was a resident of Danbury, Connecticut.  Defendant Nimmo is subject to the personal jurisdiction of

this Court because, *inter alia*, he has availed himself of the Courts of the State and County of New York.

32.    Defendant Francis Paul Pursley ("defendant Pursley") is subject to the personal jurisdiction of this Court because, *inter alia*, he has availed himself of the Courts of the State and County of New York.

33.    At all relevant times, defendant Richard Racioppi ("defendant Racioppi") was a resident of the State of New York.  Defendant Racioppi is also subject to the personal jurisdiction of this Court because, *inter alia*, he has availed himself of the Courts of the State and County of New York.

34.    At all relevant times, defendant Alex Anthony Sanchez ("defendant Sanchez") was a resident of the City, County and State of New York.  In addition, defendant Sanchez is also subject to the personal jurisdiction of this Court because, *inter alia*, he has availed himself of the Courts of the State and County of New York.

35.    Defendant Sferrazza is subject to the personal jurisdiction of this Court because, *inter alia*, he has availed himself of the Courts of the State and County of New York.

36.    At all relevant times, defendant Joseph M. Urso ("defendant Urso") was a resident of Holbrook, New York.  Defendant Urso is subject to the personal jurisdiction of this Court for the additional reason that he has availed himself of this Court by commencing an action herein.

37.    At all relevant times, defendant Rafael Valdez ("defendant Valdez") was a resident of City, county and State of New York.

38.    Defendant Rosa Vivar ("defendant Vivar") is subject to the personal jurisdiction of this Court because, *inter alia*, he has availed himself of the Courts of the State of New York.

## ALLEGATIONS APPLICABLE TO ALL CLAIMS FOR RELIEF

39.     Defendant Alvarez alleges that he suffered personal injuries, including respiratory injuries, resulting from exposure to dust and debris created by the collapses of the World Trade Center Towers and other buildings resulting from the terrorist related aircraft crashes of September 11, 2001.  Defendant Alvarez further alleges that her claimed exposure giving rise to his alleged injuries occurred both while working at, among other claimed locations, "at or around the World Trade Center Site, Ground Zero, Fresh Kills Landfill and/or in the area and buildings surrounding the World Trade Center Site following [sic] terrorist attacks on September 11, 2001" to remove dust and debris alleged to have contaminated those locations following the collapses. Counsel for defendant Alvarez has represented both to this Court and to counsel for SPI, World Trade Center Properties and the Port Authority that defendant Alvarez's claimed exposure includes exposures of the type coordinated by this Court under Master Calendar No. 21 MC 102 (AKH).

40.     Defendant Alvarez also alleges that plaintiffs SPI, the Port Authority, the City, Lefrak, Tully Construction, Tully Industries, and World Trade Center Properties, among others, are liable to him for damages arising from her claimed exposure to dust and debris created by the collapses of the World Trade Center Towers and other buildings resulting from the terrorist-related aircraft crashes of September 11, 2001.

41.     Defendant Arsenault alleges that he suffered personal injuries, including respiratory injuries, resulting from , among other causes, exposure to dust and debris created by the collapses of the World Trade Center Towers and other buildings resulting from the terrorist related aircraft crashes of September 11, 2001.  Defendant Arsenault further alleges that his claimed exposure giving rise to his alleged injuries occurred while working at the Deutsche Bank

9

Building, 130 Liberty, Street, New York, New York, to remove dust and debris alleged to have contaminated those locations following the collapses.

42.     Defendant Arsenault also alleges that plaintiffs Tully Construction, Tully Industries, Deutsche Bank Americas are liable to him for damages arising from his claimed exposure to dust and debris created by the collapses of the World Trade Center Towers and other buildings resulting from the terrorist-related aircraft crashes of September 11, 2001.

43.     Defendant Buonomini claims that on March 20, 2002 he suffered personal injuries when he allegedly fell through a hole in the floor at the former 6 World Trade Center while engaged in recovery, debris removal and clean-up work somewhere near the location of the former South Tower of the World Trade Center.

44.     Defendant Buonomini also alleges that plaintiffs the Port Authority, the City, and Tully Construction, among others, are liable to him for damages arising from the aforementioned claimed injuries allegedly suffered while he was engaged in recovery, debris removal and clean-up activities at the site of the former World Trade Center following the collapses of the World Trade Center Towers and other buildings resulting from the terrorist-related aircraft crashes of September 11, 2001.

45.     Defendant Campo alleges that on November 9, 2001, he suffered personal injuries to while engaged in recovery, debris removal and clean-up work somewhere near the location of the Verizon Building at 140 West Street, New York, New York, when he tripped over a fire hose that was being used in connection with the fire suppression, recovery, debris removal and clean-up work being performed at the World Trade Center site.

46.     Defendant Campo also alleges that plaintiff the City, among others, is liable to him for damages arising from the aforementioned claimed injuries allegedly suffered while he was engaged in recovery, debris removal and clean-up activities at the site of the former World

Trade Center following the collapses of the World Trade Center Towers and other buildings resulting from the terrorist-related aircraft crashes of September 11, 2001.

47.     Defendant Carpio alleges that he suffered personal injuries, including respiratory injuries, resulting from exposure to dust and debris created by the collapses of the World Trade Center Towers and other buildings resulting from the terrorist related aircraft crashes of September 11, 2001.  Defendant Alvarez further alleges that her claimed exposure giving rise to his alleged injuries occurred both while working at, among other claimed locations, "at or around the World Trade Center Site, ground Zero, Fresh Kills Landfill and/or in the area and buildings surrounding the World Trade Center Site following [sic] terrorist attacks on September 11, 2001" to remove dust and debris alleged to have contaminated those locations following the collapses. Counsel for defendant Alvarez has represented both to this Court and to counsel for SPI, World Trade Center Properties and the Port Authority that defendant Alvarez's claimed exposure includes exposures of the type coordinated by this Court under Master Calendar No. 21 MC 102 (AKH).

48.     Defendant Carpio also alleges that plaintiffs SPI, the Port Authority, the City, Lefrak, Tully Construction, Tully Industries, and World Trade Center Properties, among others, are liable to him for damages arising from her claimed exposure to dust and debris created by the collapses of the World Trade Center Towers and other buildings resulting from the terrorist-related aircraft crashes of September 11, 2001.

49.     Defendant Checo alleges that he suffered personal injuries, including respiratory injuries, resulting from exposure to dust and debris created by the collapses of the World Trade Center Towers and other buildings resulting from the terrorist related aircraft crashes of September 11, 2001.  Defendant Checo further alleges that his claimed exposure giving rise to his alleged injuries occurred while working at, among other claimed locations, 1 Broadway,

111/113 Broadway, 120 Broadway, 200 Water Street, One World Financial Center, Two World Financial Center, and Three World Financial Center to remove dust and debris alleged to have contaminated those locations following the collapses.

50.     Defendant Checo also alleges that plaintiffs SPI and Logany, among others, are liable to him for damages arising from his claimed exposure to dust and debris created by the collapses of the World Trade Center Towers and other buildings resulting from the terrorist-related aircraft crashes of September 11, 2001.

51.     Defendant Cieslak alleges that he suffered personal injuries, including respiratory injuries, resulting from exposure to dust and debris created by the collapses of the World Trade Center Towers and other buildings resulting from the terrorist related aircraft crashes of September 11, 2001.  Defendant Cieslak further alleges that his claimed exposure giving rise to his alleged injuries occurred both while working directly in the rescue, recovery, debris removal and clean-up activities that took place at the site of the former World Trade Center and while working at, among other claimed locations, 222 Broadway, 7 Dey Street, 4 Albany Street, 101 Murray Street, 250 South End Avenue, 90 Maiden Lane, Public School 89, One World Financial Center, Two World Financial Center and Four World Financial Center to remove dust and debris alleged to have contaminated those locations following the collapses.

52.     Defendant Cieslak also alleges that plaintiffs the City, Deutsche Bank Americas and Deutsche Bank Trust, among others, are liable to him for damages arising from his claimed exposure to dust and debris created by the collapses of the World Trade Center Towers and other buildings resulting from the terrorist-related aircraft crashes of September 11, 2001.

53.     Defendant Daly alleges that at on October 10, 2001, he suffered personal injuries to while engaged in recovery, debris removal and clean-up work at the World Trade Center site

when he allegedly was struck by falling steel that was being cut as part of the recovery, debris removal and clean-up work then being performed at the World Trade Center site.

54.     Defendant Daly also alleges that plaintiff the Port Authority is liable to him for damages arising from the aforementioned claimed injuries allegedly suffered while he was engaged in recovery, debris removal and clean-up activities at the site of the former World Trade Center following the collapses of the World Trade Center Towers and other buildings resulting from the terrorist-related aircraft crashes of September 11, 2001.

55.     Defendant Fergus alleges that at on June 12, 2002, he suffered personal injuries to while engaged in recovery, debris removal and clean-up work at the 1/9 Cortland Street subway station within World Trade Center site when he fell from a ladder that he was then using.

56.     Defendant Fergus also alleges that plaintiffs the Port Authority and the City, among others, are liable to him for damages arising from the aforementioned claimed injuries allegedly suffered while he was engaged in recovery, debris removal and clean-up activities at the site of the former World Trade Center following the collapses of the World Trade Center Towers and other buildings resulting from the terrorist-related aircraft crashes of September 11, 2001.

57.     Defendant Foremska alleges that she suffered personal injuries, including respiratory injuries, resulting from exposure to dust and debris created by the collapses of the World Trade Center Towers and other buildings resulting from the terrorist related aircraft crashes of September 11, 2001.  Defendant Foremska further alleges that her claimed exposure giving rise to her alleged injuries occurred both while working at, among other claimed locations, 101 Barclay Street, 61 Broadway, 345 Chambers Street, 100 Church Street, 110 Church Street, 285 Delancey Street, 130 Liberty Street, One Liberty Plaza, 101 Murray Street, 30 West Broadway, 395 South End Avenue and 1 Wall Street, all in the City, County and State

of New York, to remove dust and debris alleged to have contaminated those locations following the collapses.

58.    Defendant Foremska also alleges that plaintiffs the City, Deutsche Bank Americas, Deutsche Bank Trust  and Hudson Towers, among others, are liable to her for damages arising from her claimed exposure to dust and debris created by the collapses of the World Trade Center Towers and other buildings resulting from the terrorist-related aircraft crashes of September 11, 2001.

59.    Defendant Johnson alleges that at on March 26, 2002, he suffered personal injuries to while engaged in recovery, debris removal and clean-up work at the World Trade Center site when he was purportedly struck by a cinder block thrown front a front loader engaged in the recovery, debris removal and clean-up activities then occurring at the site of the former World Trade Center.

60.    Defendant Johnson also alleges that plaintiff Tully Construction, among others, is liable to him for damages arising from the aforementioned claimed injuries allegedly suffered while he was engaged in recovery, debris removal and clean-up activities at the site of the former World Trade Center following the collapses of the World Trade Center Towers and other buildings resulting from the terrorist-related aircraft crashes of September 11, 2001.

61.    Defendant Liriano alleges that she suffered personal injuries, including respiratory injuries, resulting from exposure to dust and debris created by the collapses of the World Trade Center Towers and other buildings resulting from the terrorist related aircraft crashes of September 11, 2001.  Defendant Liriano further alleges that her claimed exposure giving rise to her alleged injuries occurred both while working at, among other claimed locations, 99 Barclay St., 101 Barclay Street, 1 Broadway, 111 Broadway, 115 Broadway, 120 Broadway and 22

Cortlandt Street, all in the City, County and State of New York, to remove dust and debris alleged to have contaminated those locations following the collapses.

62.     Defendant Liriano also alleges that plaintiffs Logany and SPI, among others, are liable to her for damages arising from her claimed exposure to dust and debris created by the collapses of the World Trade Center Towers and other buildings resulting from the terrorist-related aircraft crashes of September 11, 2001.

63.     Defendant Milling alleges that at on May 14, 2002, she suffered personal injuries when she tripped and fell on a raised area of roadway located near Battery Place by Greenwich Street.

64.     Defendant Milling alleges that plaintiff the City, among others, is liable to her for damages arising from the aforementioned claimed injuries  because it is alleged that the City, among others, created the purported hazardous condition while engaged in the recovery, debris removal and clean-up activities at the site of the former World Trade Center following the collapses of the World Trade Center Towers and other buildings resulting from the terrorist-related aircraft crashes of September 11, 2001.

65.     Defendant Montalvo alleges that at on March 21, 2002, he suffered personal injuries to while engaged in recovery, debris removal and clean-up work at the World Trade Center site when he was purportedly fell from an elevated steel-cutting station.

66.     Defendant Montalvo also alleges that plaintiffs the Port Authority and the City are liable to him for damages arising from the aforementioned claimed injuries allegedly suffered while he was engaged in recovery, debris removal and clean-up activities at the site of the former World Trade Center following the collapses of the World Trade Center Towers and other buildings resulting from the terrorist-related aircraft crashes of September 11, 2001.

67.     Defendant Nimmo alleges that at 8:05 p.m. on October 6, 2001, he suffered personal injuries to his legs while engaged in recovery, debris removal and clean-up work somewhere near the location of the former South Tower of the World Trade Center.

68.     Defendant Nimmo also alleges that plaintiffs the City and the Port Authority, among others, are liable to him for damages arising from the aforementioned claimed injuries allegedly suffered while he was engaged in recovery, debris removal and clean-up activities at the site of the former World Trade Center following the collapses of the World Trade Center Towers and other buildings resulting from the terrorist-related aircraft crashes of September 11, 2001.

69.     Defendant Pursley alleges that at approximately 3:45 p.m. on November 13, 2001, he suffered personal injuries while engaged in recovery, debris removal and clean-up work somewhere near the location of the Liberty Street portion of the "slurry wall" at the World Trade Center when a supposedly overloaded grappler involved in the recovery, debris removal and clean-up work fell and purportedly caused the claimed injuries.

70.     Defendant Pursley also alleges that plaintiff the Port Authority is liable to him for damages arising from the aforementioned claimed injuries allegedly suffered while he was engaged in recovery, debris removal and clean-up activities at the site of the former World Trade Center following the collapses of the World Trade Center Towers and other buildings resulting from the terrorist-related aircraft crashes of September 11, 2001.

71.     Defendant Racioppi alleges that he suffered personal injuries, including respiratory injuries, resulting from, among other causes, exposure to dust and debris created by the collapses of the World Trade Center Towers and other buildings resulting from the terrorist related aircraft crashes of September 11, 2001, as well as claimed exposure to mold while defendant Racioppi was engaged in his work.  Defendant Racioppi further alleges that his

claimed exposure giving rise to his alleged injuries occurred while working at the Deutsche Bank Building, 130 Liberty Street, New York, New York, to remove dust and debris alleged to have contaminated those locations following the collapses.

72.     Defendant Racioppi also alleges that plaintiffs Tully Construction, Tully Industries and Deutsche Bank Americas are liable to him for damages arising from his claimed exposure to dust and debris created by the collapses of the World Trade Center Towers and other buildings resulting from the terrorist-related aircraft crashes of September 11, 2001.

73.     Defendant Sanchez alleges that he suffered personal injuries, including respiratory injuries, resulting from exposure to dust and debris created by the collapses of the World Trade Center Towers and other buildings resulting from the terrorist related aircraft crashes of September 11, 2001.  Defendant Sanchez further alleges that his claimed exposure giving rise to his alleged injuries occurred while working at, among other claimed locations, 1 Broadway, 111/113 Broadway, 120 Broadway, 200 Water Street Properties, One World Financial Center, Two World Financial Center, and Three World Financial Center to remove dust and debris alleged to have contaminated those locations following the collapses.

74.     Defendant Sanchez also alleges that plaintiffs  SPI and Logany, among others, are liable to him for damages arising from his claimed exposure to dust and debris created by the collapses of the World Trade Center Towers and other buildings resulting from the terrorist-related aircraft crashes of September 11, 2001.

75.     Defendant Sferrazza alleges that, on January 3, 2002, he suffered personal injuries when he fell while engaged in recovery, debris removal and clean-up work at the World Trade Center Site somewhere near the corner of West and Vesey Streets across from the Winter Garden at Battery Park City.

76.     Defendant Sferrazza also alleges that plaintiffs the City, the Port Authority and AMEC are liable to him for damages arising from the aforementioned claimed injuries allegedly suffered while he was engaged in recovery, debris removal and clean-up activities at the site of the former World Trade Center following the collapses of the World Trade Center Towers and other buildings resulting from the terrorist-related aircraft crashes of September 11, 2001.

77.     Defendant Urso alleges that he suffered personal injuries, including respiratory injuries, resulting from exposure to dust and debris created by the collapses of the World Trade Center Towers and other buildings resulting from the terrorist related aircraft crashes of September 11, 2001. Defendant Urso further alleges that his claimed exposure giving rise to his alleged injuries occurred both while working directly in the rescue, recovery, debris removal and clean-up activities that took place at the site of the former World Trade Center and while working at, among other claimed locations, One World Financial Center, Two World Financial Center, Four World Financial Center, Five World Financial Center, Seven World Financial Center, "other structures collectively known as the World Trade Center Site", and 78 through 86 Trinity Place (commonly known as the "American Stock Exchange") to remove dust and debris alleged to have contaminated those locations following the collapses.

78.     Defendant Urso also alleges that plaintiffs the City, SPI, World Trade Center Properties and the Port Authority are liable to him for damages arising from his claimed exposure to dust and debris created by the collapses of the World Trade Center Towers and other buildings resulting from the terrorist-related aircraft crashes of September 11, 2001.

79.     Defendant Valdez alleges that he suffered personal injuries, including respiratory injuries, resulting from exposure to dust and debris created by the collapses of the World Trade Center Towers and other buildings resulting from the terrorist related aircraft crashes of September 11, 2001. Defendant Valdez further alleges that his claimed exposure giving rise to

his alleged injuries occurred while working at, among other claimed locations, 1 Broadway, 111/113 Broadway, 120 Broadway, 200 Water Street, One World Financial Center and Two World Financial Center to remove dust and debris alleged to have contaminated those locations following the collapses.

80.       Defendant Valdez also alleges that plaintiffs Logany and SPI are liable to him for damages arising from his claimed exposure to dust and debris created by the collapses of the World Trade Center Towers and other buildings resulting from the terrorist-related aircraft crashes of September 11, 2001.

81.       Defendant Vivar alleges that she suffered personal injuries, including respiratory injuries, resulting from exposure to dust and debris created by the collapses of the World Trade Center Towers and other buildings resulting from the terrorist related aircraft crashes of September 11, 2001.  Defendant Vivar further alleges that her claimed exposure giving rise to his alleged injuries occurred both while working at, among other claimed locations, "at or around the World Trade Center Site, ground Zero, Fresh Kills Landfill and/or in the area and buildings surrounding the World Trade Center Site following [sic] terrorist attacks on September 11, 2001" to remove dust and debris alleged to have contaminated those locations following the collapses. Counsel for defendant Vivar has represented both to this Court and to counsel for SPI, World Trade Center Properties and the Port Authority that defendant Vivar's claimed exposure includes exposures of the type coordinated by this Court under Master Calendar No. 21 MC 102 (AKH).

82.       Defendant Vivar also alleges that plaintiffs SPI, the Port Authority, the City, Lefrak, Tully Construction, Tully Industries, and World Trade Center Properties, among others, are liable to him for damages arising from her claimed exposure to dust and debris created by the collapses of the World Trade Center Towers and other buildings resulting from the terrorist-related aircraft crashes of September 11, 2001.

83.    Section 408(b)(1) of the ATSSSA provides:

**Availability of Action -** There shall exist a Federal cause of action for damages arising out of the hijacking and subsequent crashes of American Airlines flights 11 and 77 and United Airlines flights 93 and 175, on September 11, 2001. Notwithstanding section 40120(c) of title 49 United States Code, this cause of action shall be the exclusive remedy for damages arising out of the hijacking and subsequent crashes of such flights.

84.    Section 408(b)(3) of the ATSSSA provides:

**Jurisdiction -** The United States District Court for the Southern District of New York shall have original and exclusive jurisdiction over all actions brought for any claim (including any claim for loss of property, personal injury, or death) resulting from or relating to the terrorist-related aircraft crashes of September 11, 2001.

85.    The United States Court of Appeals for the Second Circuit has determined that these sections of the ATSSSA were intended to preempt all state law claims for damages arising out of the terrorist-related aircraft crashes of September 11, 2001:

First, it is clear from § 408's provisions that *"there shall exist a Federal cause of action* for damages arising out of the hijacking and subsequent crashes" and that *"this cause of action shall be the exclusive remedy* for damages arising out of the hijacking and subsequent crashes of such flights," ATSSSA § 408(b)(1) (emphases added), that Congress intended to preempt all state-law claims for damages arising out of the hijackings and subsequent crashes.  Thus, although state law would provide a cause of action in the absence of contrary federal law, the provisions in § 408(b)(1) establishing an exclusive federal remedy undeniably bespeak an intent to displace state-law remedies entirely for such damages claims.

Second, it is clear from the additional provision in § 408 that the federal district court in the Southern District "shall have . . . *exclusive* jurisdiction over *all* actions brought for *any* claim . . . resulting from or relating to the terrorist-related aircraft crashes of September 11, 2001," id. § 408(b)(3) (emphases added), that Congress intended that all suits asserting the ATSSSA-created cause of action be litigated only in that federal court.

In re WTC Disaster Site, 414 F.3d 352, 375 (2d Cir. 2005) (emphases and ellipses in original).

86.    In determining the scope of the preemption effected by § 408 of the ATSSSA, the Second Circuit turned to the purposes of the ATSSSA and its legislative history:

. . . [T]he statements during debate on the legislation made clear that Congress' principal goals were to provide relief without litigation to individuals harmed as a result of the crashes and to limit the liability of entities that were likely to be sued for injuries suffered in connection with the crashes. See, e.g., 147 Cong. Rec. S9594 (Sept. 21, 2001) (statement of Sen. McCain). Even Congressmen who decried the speed with which the legislation was passed accepted that those were its principal purposes. See, e.g., 147 Cong. Rec. H5914 (Sept. 21, 2001) (statement of Rep. Conyers).

Although we are aware of no statements in the legislative history expressly addressing the scope of the provisions establishing the ATSSSA federal cause of action as a litigant's exclusive remedy, there is ample evidence that Congress intended all such causes of action to be adjudicated in a single federal forum. For example, Senator Schumer stated:

> It may be a little unclear to some whether all lawsuits or just lawsuits against the airlines will be situated in the Southern District of New York. The intent here is to put all civil suits arising from the tragic events of September 11 in the Southern District.

147 Cong. Rec. S9592 (Sept. 21, 2001) (emphases added). Similarly, Senator McCain stated that "the bill attempts to provide some sense to the litigation by consolidating all civil litigation arising from the terrorist acts of September 11 in one court." 147 Cong. Rec. S9594 (Sept. 21, 2001) (emphasis added). And Senator Hatch stated: "For those who seek to pursue the litigation route, I am pleased that we consolidated the causes of action in one Federal court so that there will be some consistency in the judgments awarded." 147 Cong. Rec. S9595 (Sept. 21, 2001) (emphasis added).

While these statements are addressed most directly to the conferral of exclusive jurisdiction on the federal court, the common theme of references to "all lawsuits," "all civil litigation," and "all civil suits," along with the expansive phrase "relating to" -- all of which contrast with the narrow focus of § 405 -- strongly suggests that Congress meant the ATSSSA-created cause of action to preempt more than just the claims of the persons who were on the hijacked planes or present at or in the immediate aftermath of the crashes, and more than just claims that arose in the formal search for survivors.

Id. at 376-77 (emphases in original).

87.     Accordingly, the Second Circuit held that the ATSSSA-created exclusive federal

cause of action preempted state-law claims for those that claimed respiratory injuries caused by

alleged inhalation of the dust and debris resulting from the collapses:

As it requires no great stretch to view claims of injuries from inhalation of air rendered toxic by the fires, smoke, and pulverized debris caused by the terrorist-related aircraft crashes of September 11 as claims "relating to" and "arising out of" those crashes, we conclude that Congress intended ATSSSA's cause of action to be sufficiently expansive to cover claims of respiratory injuries by workers in sifting, removing, transporting, or disposing of that debris.

Id. at 377.

88.     Finally, the Second Circuit specifically rejected any suggestion that the

preemption effected by the ATSSSA had any geographic or temporal limits:

> [W]e are constrained to note that **we see no basis for [a] ruling that ATSSSA's preemptive effect differs depending on whether the respiratory injuries were suffered at the World Trade Center site or elsewhere, or on whether those injuries were suffered before or after midnight on September 29.**  Nothing in the language of the statute or the legislative history suggests such lines of demarcation.  [Such a] geographical line would mean that, as to a given pile of debris that gave off toxic fumes both at the World Trade Center site and at a marine transfer station or the landfill to which it was transported, the claim of a worker who inhaled those fumes at the World Trade Center site would be preempted, while the claim of a worker who inhaled fumes from the same debris at either of the other sites would not.  And given that it was December or later before all of the fires caused by the crashes were extinguished, [such a] cutoff date would mean that the ATSSSA preempts the claim of a worker who inhaled smoke from a fire on September 29 but not the claim of a worker who inhaled smoke one day later from the same fire.  We cannot conclude that Congress intended such differences.

Id. at 380 (emphasis added).

89.     Therefore, the Second Circuit specifically held that state-law claims by workers --

such as the claims made by defendants Alvarez, Arsenault, Carpio, Checo, Cieslak, Foremska,

Liriano, Racioppi, Sanchez, Urso, Valdez and Vivar -- claiming personal injuries, including

respiratory injuries, alleged to have resulted from exposure to dust and debris released into the

air by the collapses of World Trade Center buildings were preempted by the ATSSSA-created

exclusive federal cause of action:

> We need not take the phrase "relating to" to any metaphysical extreme in order to conclude that **it encompasses the claims . . . that airborne toxins and other contaminants emanating from the debris created by the crashes caused**

22

**respiratory injuries to plaintiffs employed to** sift, **remove,** transport, or dispose of **that debris.**

Id. (emphases added).

90.    Moreover, the Second Circuit's decision in In re World Trade Center Disaster Site also teaches that any other state-law personal injury claims arising out of, resulting from or relating to the rescue, recovery, debris removal and clean-up operations conducted at the World Trade Center site and its environs and at any location through which or to which the dust and debris from that site and its environs were allegedly transported are also preempted by the ATSSSA-created exclusive federal cause of action and are subject to the original and exclusive federal jurisdiction created by the ATSSSA. In distinguishing its prior holding in Canada Life Assurance co. v. Converium Ruckversicherung (Deutschland) AG, 335 F.3d 53 (2d Cir. 2003) ("Canada Life"), concerning the scope of the ATSSSA's exclusive jurisdiction provision, the Second Circuit provided clear guidance as to the factors to be considered in establishing the breadth of the ATSSSA's preemption:

> . . . In Canada Life, we were confronted with the question of whether ATSSSA gave the federal court jurisdiction of a contract dispute between foreign reinsurers with respect to liabilities that resulted from the terrorist attacks of September 11, 2001. We noted that "[t]he purpose of Section 408(b)(3) . . . was to ensure consistency and efficiency in resolving the many expected actions arising from the events of September 11." [335 F.3d] at 58.

>> Requiring a single forum for "all actions brought for any claim . . . resulting from or relating to" the events of September 11 must have as its goal the avoidance of the undesirable effects that litigation of September 11 claims in the various state and federal courts would inevitably produce. These effects might include: inconsistent or varying adjudications of actions based upon the same sets of facts; adjudications having a preclusive effect on non-parties or substantially impairing or impeding non-parties' abilities to protect their rights; victims or their survivors without any possibility of recovery when the limits of liability have been exhausted in other lawsuits; the difficulties in mediation when defendants are sued in multiple state and federal courts, and the

> waste of private and judicial resources in multiple state and federal
> courts hearing cases involving the same factual and legal issues.
>
> Id. at 59.  We observed that, although the dispute between the reinsurers would
> not have arisen "but for" the events of September 11, that dispute would not
> require "adjudication of any issue of law or fact that concerns the events of
> September 11," id. at 57, and we held that there was no reason to infer that
> Congress had intended that dispute to be encompassed by ATSSSA's
> jurisdictional provision.
>
>     In the present cases, in contrast, the relationship between the September 11
> crashes and the plaintiffs' claims is considerably more extensive than simple "but
> for" causation.  Here, the court will be required to explore such common factors
> as the immediate need to conduct and continue searches for survivors without
> regard to the availability of respirators; the continuing need to sift for human
> remains; the unprecedented quantity of debris; the ever-present need for
> engineering evaluation of the structural safety of remaining walls and
> foundations; and the character of the crash as a crime scene, creating security
> concerns and affecting the manner in which the demolition and debris-removal
> operations were conducted and the manner in which the debris was treated both at
> that site and at marine transfer points and the landfill.  The court will confront
> such individual factors as the degree to which each plaintiff was exposed to toxic
> substances.  **Thus, the factors cited in the <u>Canada Life</u> passage quoted above
> suggest that claims such as those at issue in the present cases are precisely the
> type of claims that Congress intended to preempt.**

In re WTC Disaster Site, 414 F.3d at 378-79 (first ellipsis added; remaining ellipses in original;

bold emphasis added).

        91.     Practically all of the "common factors" that the Second Circuit enumerated in <u>In</u>

<u>re WTC Disaster Site</u> as demonstrating that the injuries then before the Court fell within both the

ATSSSA's preemption of state-law claims and the grant of exclusive federal jurisdiction apply

equally to the Defendants' personal injuries (of whatever nature) resulting from rescue, recovery,

debris removal and clean-up operations conducted at the World Trade Center site and its

environs and at any location through which or to which the dust and debris from that site and its

environs were allegedly transported.

        92.     In addition, a court hearing personal injury claims (of whatever nature) resulting

from rescue, recovery, debris removal and clean-up operations conducted at the World Trade

Center site and its environs and at any location through which or to which the dust and debris

from that site and its environs were transported will also be required to explore other such

"common factors", including, but not limited to:

     a.     the manner in which the World Trade Center site was managed and controlled and the legal implications of the control and management scheme;

     b.     the applicability of the New York State Defense Emergency Act, N.Y. Unconsol. Law §§ 9101-9200 (McKinney 2002), to the rescue, recovery, debris removal and clean-up operations conducted at the World Trade Center site and its environs and at any location through which or to which the dust and debris from that site and its environs were transported;

     c.     the applicability of New York's State And Local Natural And Man-Made Disaster Preparedness Statute, N.Y. Exec. Law §§ 20-29-g (McKinney 2002), to those governmental entities involved in the rescue, recovery, debris removal and clean-up operations conducted at the World Trade Center site and its environs and at any location through which or to which the dust and debris from that site and its environs were transported; and

     d.     the applicability of various federal common-law and state common-law immunities to the rescue, recovery, debris removal and clean-up operations conducted at the World Trade Center site and its environs and at any location through which or to which the dust and debris from that site and its environs was transported.

     93.     Thus, the Second Circuit's guidance in both Canada Life and In re World Trade

Center Disaster Site demonstrates that those claims alleging personal injury (of whatever nature)

arising out of, resulting from or relating to the rescue, recovery, debris removal and clean-up

operations conducted at the World Trade Center site and its environs and at any location through

which or to which the dust and debris from that site and its environs were allegedly transported,

such as those asserted by defendants Buonomini, Campo, Daly, Fergus, Johnson, Milling,

Montalvo, Nimmo, Pursley and Sferrazza, fall within the preemption established by § 408(b)(1)

of the ATSSSA and are within the original and exclusive federal jurisdiction of this Court

pursuant to § 408(b)(3) of the ATSSSA.

**CLAIM FOR RELIEF**
**(Declaratory Judgment)**

94.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 93 above as if fully set forth herein.

95.     Notwithstanding the Second Circuit's holdings and guidance, there exists a case and controversy regarding whether the claims asserted by the Defendants against the Plaintiffs fall within the preemption established by § 408(b)(1) of the ATSSSA and are within the original and exclusive federal jurisdiction of this Court pursuant to § 408(b)(3) of the ATSSSA.

96.     This Court itself has acknowledged the existence of such a case and controversy. At a conference held on September 29, 2005 in In re: World Trade Center Lower Manhattan Disaster Site Litigation, 21 MC 102 (AKH), Judge Hellerstein repeatedly questioned whether he had jurisdiction over those cases alleging respiratory injury allegedly arising from exposures to contaminants, dust and debris resulting from the collapses of the World Trade Center buildings at locations not encompassed by the definition of the "World Trade Center Site" contained in Case Management Order No. 3 entered in In re World Trade Center Disaster Site Litigation, 21 MC 100 (AKH) and whether he had jurisdiction over actions alleging personal injury other than respiratory injury arising from rescue, recovery, debris removal and clean-up operations conducted at the World Trade Center site and its environs and at any location through which or to which the dust and debris removed that site and its environs were transported:

> THE COURT:        It seems to me that I need to declare my jurisdiction in this and to decide if I have jurisdiction.  I don't know if anyone is going to make that motion.
>
>          *                   *                   *
>
> THE COURT:        [Speaking to counsel for those claiming respiratory injuries allegedly arising from exposures at locations other than the World Trade Center site itself to contaminants, dust and debris created by the collapses of the World Trade Center buildings:]  I could see that there are reasons why you want to come

26

to this court and there are reasons why it is better for one judge who is familiar with part of this to coordinate the whole, but that doesn't mean you have federal jurisdiction.  I think that it is important for me to determine whether or not I have jurisdiction.

*      *      *

MR. TYRRELL [counsel for the City]:      Your Honor, I understand the need to address that issue, but I think it is important to place it in context.  Given the Second Circuit's decision, it would be, I suggest, pretty absurd if we came to the conclusion that a person who claimed injury from the World Trade Center dust on the footprint of the World Trade Center site is covered by federal jurisdiction and belongs in this court and the person that is exposed to exactly the same dust across the street is not.  I mean, the chance to go back to the very mischief that Congress tried to avoid by passing this legislation is manifest.

THE COURT:         You may be right.  But there is not only a complaint against dust.  There is a complaint about not providing the proper protective devices and gear to the employees, which is not the business of the [C]ity and not the business of the Port Authority, but which arguably is the business of the building owners.  I held in Spagnuolo and Gr[a]ybill involving aspects of labor protections that that's a matter for the labor law and for the state courts.  There is a very good argument given McNally [i.e., In re WTC Disaster Site], that my decision was erroneous, but it is there and it needs to be dealt with and it can't be ignored except at peril.  If these cases run their course, several years would pass, and if an appeal is then taken to the Second Circuit, there will be no law of the case here and there will be a different panel with different types of jurisdictional jurisprudence then extant. . . .

*      *      *

THE COURT:         I have to raise this issue sua sponte.  Even if everybody wants me to have jurisdiction, I have to raise it and I think it is in the plaintiffs' interest to raise it as well. . . .

*      *      *

I don't see this issue as free from doubt, and I think it needs to be advanced.  I think that you could live with either a federal regime or a state regime and do comparatively well or bad in both. . . . .  What I think you can't deal with is uncertainty. . . .

Transcript of the September 29, 2005 Conference in In re: World Trade Center Lower Manhattan

Disaster Site Litigation, 21 MC 102 (AKH), at pp. 32, 33, 34-35, 40 and 41 (copy attached as

Exhibit A).

27

97.     Therefore, pursuant to 28 U.S.C. § 2201, Plaintiffs are entitled to have this Court declare their legal rights concerning the applicability of §§ 408(b)(1) and 408(b)(3) of the ATSSSA to any claims asserted against any of the Plaintiffs by any of the Defendants for damages for alleged personal injuries (respiratory or otherwise) arising out of, resulting from or relating to the terrorist-related aircraft crashes of September 11, 2001.

98.     In light of this Court's belief that such exclusive federal jurisdiction for such claims is "not free from doubt", id. at 41, such a declaratory judgment will serve a useful purpose in clarifying and settling the legal relations regarding these claims at issue.

99.     Such a declaratory judgment will terminate and afford relief from the uncertainty, insecurity and controversy giving rise to this proceeding, to wit, the existence of this Court's jurisdiction or lack thereof over Defendants' claims.

100.    By reason of the foregoing, Plaintiffs are entitled to a declaratory judgment that any claims asserted against any of them by any of the Defendants for damages for injuries (respiratory or otherwise) arising out of, resulting from or relating to the terrorist-related aircraft crashes of September 11, 2001 (a) consist solely of the exclusive federal cause of action created by § 408(b)(1)of the ATSSSA, and (b) are subject to the original and exclusive jurisdiction of the United States District Court for the Southern District of New York pursuant to § 408(b)(3) of the ATSSSA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment against Defendants as follows:

a.      Declaring that the only claim defendant Alvarez has to recover his claimed damages purportedly arising from alleged personal injuries, including respiratory injuries, purportedly caused by exposure to dust and debris created by the collapses of the World Trade Center Towers resulting from the terrorist related aircraft crashes of September 11, 2001 at,

among other claimed locations, the "World Trade Center Site, Ground Zero, Fresh Kills Landfill and/or in the area and buildings surrounding the World Trade Center Site" from plaintiffs SPI, the City, Lefrak, Tully Construction, Tully Industries and World Trade Center Properties is the exclusive federal cause of action created by § 408(b)(1) of the ATSSSA;

      b.     Declaring that any claim made by defendant Alvarez to recover his claimed damages purportedly arising from alleged personal injuries, including respiratory injuries, purportedly caused by exposure to dust and debris created by the collapses of the World Trade Center Towers resulting from the terrorist related aircraft crashes of September 11, 2001 at, among other claimed locations, the "World Trade Center Site, Ground Zero, Fresh Kills Landfill and/or in the area and buildings surrounding the World Trade Center Site" from plaintiffs SPI, the City, Lefrak, Tully Construction, Tully Industries and World Trade Center Properties is subject to the original and exclusive jurisdiction of the United States District Court for the Southern District of New York pursuant to § 408(b)(3) of the ATSSSA;

      c.     Declaring that the only claim defendant Arsenault has to recover his claimed damages purportedly arising from alleged personal injuries, including respiratory injuries, purportedly caused by exposure to dust and debris at 130 Liberty Street created by the collapses of the World Trade Center Towers resulting from the terrorist related aircraft crashes of September 11, 2001 from plaintiffs Tully Construction, Tully Industries and Deutsche Bank Americas is the exclusive federal cause of action created by § 408(b)(1) of the ATSSSA;

      d.     Declaring that any claim made by defendant Arsenault to recover his claimed damages purportedly arising from alleged personal injuries, including respiratory injuries, purportedly caused by exposure to dust and debris at 130 Liberty Street created by the collapses of the World Trade Center Towers resulting from the terrorist related aircraft crashes of September 11, 2001 from plaintiffs Tully Construction, Tully Industries and Deutsche Bank

Americas is subject to the original and exclusive jurisdiction of the United States District Court

for the Southern District of New York pursuant to § 408(b)(3) of the ATSSSA;

      e.      Declaring that defendant Buonomini may only recover damages from plaintiffs

the City, the Port Authority and Tully Construction for his alleged personal injuries arising from

the claimed accident at the site of the former World Trade Center on March 20, 2002 pursuant to

the exclusive federal cause of action created by § 408(b)(1) of the ATSSSA;

      f.      Declaring that any claim brought by defendant Buonomini seeking recovery from

plaintiffs the City, the Port Authority and Tully Construction for his alleged personal injuries

arising from the claimed accident at the site of the former World Trade Center on March 20,

2002 is subject to the original and exclusive jurisdiction of the United States District Court for

the Southern District of New York pursuant to § 408(b)(3) of the ATSSSA;

      g.      Declaring that defendant Campo may only recover damages from plaintiff the

City for his alleged personal injuries arising from the claimed accident at the site of the former

World Trade Center on November 9, 2001 pursuant to the exclusive federal cause of action

created by § 408(b)(1) of the ATSSSA;

      h.      Declaring that any claim brought by defendant Campo seeking recovery from

plaintiff the City for his alleged personal injuries arising from the claimed accident at the site of

the former World Trade Center on November 9, 2001 is subject to the original and exclusive

jurisdiction of the United States District Court for the Southern District of New York pursuant to

§ 408(b)(3) of the ATSSSA;

      i.      Declaring that the only claim defendant Carpio has to recover his claimed

damages purportedly arising from alleged personal injuries, including respiratory injuries,

purportedly caused by exposure to dust and debris created by the collapses of the World Trade

Center Towers resulting from the terrorist related aircraft crashes of September 11, 2001 at,

30

among other claimed locations, the "World Trade Center Site, Ground Zero, Fresh Kills Landfill and/or in the area and buildings surrounding the World Trade Center Site" from plaintiffs SPI, the City, Lefrak, Tully Construction, Tully Industries and World Trade Center Properties is the exclusive federal cause of action created by § 408(b)(1) of the ATSSSA;

      j.    Declaring that any claim made by defendant Carpio has to recover his claimed damages purportedly arising from alleged personal injuries, including respiratory injuries, purportedly caused by exposure to dust and debris created by the collapses of the World Trade Center Towers resulting from the terrorist related aircraft crashes of September 11, 2001 at, among other claimed locations, the "World Trade Center Site, Ground Zero, Fresh Kills Landfill and/or in the area and buildings surrounding the World Trade Center Site" from plaintiffs SPI, the City, Lefrak, Tully Construction, Tully Industries and World Trade Center Properties is subject to the original and exclusive jurisdiction of the United States District Court for the Southern District of New York pursuant to § 408(b)(3) of the ATSSSA;

      k.    Declaring that the only claim defendant Checo has to recover his claimed damages purportedly arising from alleged personal injuries, including respiratory injuries, purportedly caused by exposure to dust and debris created by the collapses of the World Trade Center Towers resulting from the terrorist related aircraft crashes of September 11, 2001 at, among other claimed locations, 1 Broadway, 111/113 Broadway, 120 Broadway, 200 Water Street, One World Financial Center, Two World Financial Center, and Three World Financial Center from plaintiffs SPI and Logany is the exclusive federal cause of action created by § 408(b)(1) of the ATSSSA;

      l.    Declaring that any claim made by defendant Checo has to recover his claimed damages purportedly arising from alleged personal injuries, including respiratory injuries, purportedly caused by exposure to dust and debris created by the collapses of the World Trade

Center Towers resulting from the terrorist related aircraft crashes of September 11, 2001 at, among other claimed locations, 1 Broadway, 111/113 Broadway, 120 Broadway, 200 Water Street, One World Financial Center, Two World Financial Center, and Three World Financial Center from plaintiffs SPI and Logany is subject to the original and exclusive jurisdiction of the United States District Court for the Southern District of New York pursuant to § 408(b)(3) of the ATSSSA;

m.     Declaring that the only claim defendant Cieslak has to recover his claimed damages purportedly arising from alleged personal injuries, including respiratory injuries, purportedly caused by exposure to dust and debris created by the collapses of the World Trade Center Towers resulting from the terrorist related aircraft crashes of September 11, 2001 at, among other claimed locations, 222 Broadway, 7 Dey Street, 4 Albany Street, 101 Murray Street, 250 South Avenue, 90 Maiden Lane, Public School 89, One World Financial Center, Two World Financial Center, and Four World Financial Center from plaintiffs the City, Deutsche Bank Americas and Deutsche Bank Trust is the exclusive federal cause of action created by § 408(b)(1) of the ATSSSA;

n.     Declaring that any claim made by defendant Cieslak has to recover his claimed damages purportedly arising from alleged personal injuries, including respiratory injuries, purportedly caused by exposure to dust and debris created by the collapses of the World Trade Center Towers resulting from the terrorist related aircraft crashes of September 11, 2001 at, among other claimed locations, 222 Broadway, 7 Dey Street, 4 Albany Street, 101 Murray Street, 250 South Avenue, 90 Maiden Lane, Public School 89, One World Financial Center, Two World Financial Center, and Four World Financial Center from plaintiffs the City, Deutsche Bank Americas and Deutsche Bank Trust is subject to the original and exclusive jurisdiction of

the United States District Court for the Southern District of New York pursuant to § 408(b)(3) of the ATSSSA;

o.      Declaring that defendant Daly may only recover damages from plaintiff the Port Authority for his alleged personal injuries arising from the claimed accident at the site of the former World Trade Center on October 10, 2001 pursuant to the exclusive federal cause of action created by § 408(b)(1) of the ATSSSA;

p.      Declaring that any claim brought by defendant Daly seeking recovery from plaintiff the Port Authority for his alleged personal injuries arising from the claimed accident at the site of the former World Trade Center on October 10, 2001 is subject to the original and exclusive jurisdiction of the United States District Court for the Southern District of New York pursuant to § 408(b)(3) of the ATSSSA;

q.      Declaring that defendant Fergus may only recover damages from plaintiffs the Port Authority and the City for his alleged personal injuries arising from the claimed accident at the site of the former World Trade Center on June 12, 2002 pursuant to the exclusive federal cause of action created by § 408(b)(1) of the ATSSSA;

r.      Declaring that any claim brought by defendant Fergus seeking recovery from plaintiffs the Port Authority and the City for his alleged personal injuries arising from the claimed accident at the site of the former World Trade Center on June 12, 2002 is subject to the original and exclusive jurisdiction of the United States District Court for the Southern District of New York pursuant to § 408(b)(3) of the ATSSSA;

s.      Declaring that the only claim defendant Foremska has to recover her claimed damages purportedly arising from alleged personal injuries, including respiratory injuries, purportedly caused by exposure to dust and debris created by the collapses of the World Trade Center Towers resulting from the terrorist related aircraft crashes of September 11, 2001 at,

33

among other claimed locations, 101 Barclay Street, 61 Broadway, 345 Chamber Street, 100 Church Street, 110 Church Street, 285 Delancey Street, 130 Liberty Street, One Liberty Plaza, 101 Murray Street, 30 West Broadway, 395 South End Avenue and 1 Wall Street from plaintiffs the City, Deutsche Bank Trust, Deutsche Bank Americas and Hudson Towers is the exclusive federal cause of action created by § 408(b)(1) of the ATSSSA;

       t.     Declaring that any claim made by defendant Foremska has to recover her claimed damages purportedly arising from alleged personal injuries, including respiratory injuries, purportedly caused by exposure to dust and debris created by the collapses of the World Trade Center Towers resulting from the terrorist related aircraft crashes of September 11, 2001 at, among other claimed locations, 101 Barclay Street, 61 Broadway, 345 Chamber Street, 100 Church Street, 110 Church Street, 285 Delancey Street, 130 Liberty Street, One Liberty Plaza, 101 Murray Street, 30 West Broadway, 395 South End Avenue and 1 Wall Street from plaintiffs the City, Deutsche Bank Trust, Deutsche Bank Americas and Hudson Towers is subject to the original and exclusive jurisdiction of the United States District Court for the Southern District of New York pursuant to § 408(b)(3) of the ATSSSA;

       u.     Declaring that defendant Johnson may only recover damages from plaintiff Tully Construction for his alleged personal injuries arising from the claimed accident at the site of the former World Trade Center on March 26, 2002 pursuant to the exclusive federal cause of action created by § 408(b)(1) of the ATSSSA;

       v.     Declaring that any claim brought by defendant Johnson seeking recovery from plaintiff Tully Construction for his alleged personal injuries arising from the claimed accident at the site of the former World Trade Center on March 26, 2002 is subject to the original and exclusive jurisdiction of the United States District Court for the Southern District of New York pursuant to § 408(b)(3) of the ATSSSA;

34

w.      Declaring that the only claim defendant Liriano has to recover her claimed

damages purportedly arising from alleged personal injuries, including respiratory injuries,

purportedly caused by exposure to dust and debris created by the collapses of the World Trade

Center Towers resulting from the terrorist related aircraft crashes of September 11, 2001 at,

among other claimed locations, 99 Barclay Street, 101 Barclay Street, 1 Broadway, 111

Broadway, 115 Broadway, 120 Broadway, and 22 Cortlandt Street from plaintiffs Logany and

SPI is the exclusive federal cause of action created by § 408(b)(1) of the ATSSSA;

x.      Declaring that any claim made by defendant Liriano has to recover her claimed

damages purportedly arising from alleged personal injuries, including respiratory injuries,

purportedly caused by exposure to dust and debris created by the collapses of the World Trade

Center Towers resulting from the terrorist related aircraft crashes of September 11, 2001 at,

among other claimed locations, 99 Barclay Street, 101 Barclay Street, 1 Broadway, 111

Broadway, 115 Broadway, 120 Broadway, and 22 Cortlandt Street from plaintiffs Logany and

SPI is subject to the original and exclusive jurisdiction of the United States District Court for the

Southern District of New York pursuant to § 408(b)(3) of the ATSSSA;

y.      Declaring that defendant Milling may only recover damages from plaintiff the

City for her alleged personal injuries arising from the claimed accident on May 14, 2002

pursuant to the exclusive federal cause of action created by § 408(b)(1) of the ATSSSA;

z.      Declaring that any claim brought by defendant Milling seeking recovery from

plaintiff the City for her alleged personal injuries arising from the claimed accident on May 14,

2002 is subject to the original and exclusive jurisdiction of the United States District Court for

the Southern District of New York pursuant to § 408(b)(3) of the ATSSSA;

aa.     Declaring that defendant Montalvo may only recover damages from plaintiffs the

Port Authority and the City for his alleged personal injuries arising from the claimed accident at

35

the site of the former World Trade Center on March 21, 2002 pursuant to the exclusive federal cause of action created by § 408(b)(1) of the ATSSSA;

   bb. Declaring that any claim brought by defendant Montalvo seeking recovery from plaintiffs the City and the Port Authority for his alleged personal injuries arising from the claimed accident at the site of the former World Trade Center on March 21, 2002 is subject to the original and exclusive jurisdiction of the United States District Court for the Southern District of New York pursuant to § 408(b)(3) of the ATSSSA;

   cc. Declaring that defendant Nimmo may only recover damages from plaintiffs the Port Authority and the City for his alleged personal injuries arising from the claimed accident at the site of the former World Trade Center on October 6, 2001 pursuant to the exclusive federal cause of action created by § 408(b)(1) of the ATSSSA;

   dd. Declaring that any claim brought by defendant Nimmo seeking recovery from plaintiffs the City and the Port Authority for his alleged personal injuries arising from the claimed accident at the site of the former World Trade Center on October 6, 2001 is subject to the original and exclusive jurisdiction of the United States District Court for the Southern District of New York pursuant to § 408(b)(3) of the ATSSSA;

   ee. Declaring that defendant Pursley may only recover damages from plaintiff the Port Authority for his alleged personal injuries arising from the claimed accident at the site of the former World Trade Center on November 13, 2001 pursuant to the exclusive federal cause of action created by § 408(b)(1) of the ATSSSA;

   ff. Declaring that any claim brought by defendant Pursley seeking recovery from plaintiffs the City and the Port Authority for his alleged personal injuries arising from the claimed accident at the site of the former World Trade Center on November 13, 2001 is subject

to the original and exclusive jurisdiction of the United States District Court for the Southern District of New York pursuant to § 408(b)(3) of the ATSSSA;

gg.      Declaring that the only claim defendant Racioppi has to recover his claimed damages purportedly arising from alleged personal injuries, including respiratory injuries, purportedly caused by exposure to dust and debris at 130 Liberty Street created by the collapses of the World Trade Center Towers resulting from the terrorist related aircraft crashes of September 11, 2001 from plaintiffs Tully Construction, Tully Industries and Deutsche Bank Americas is the exclusive federal cause of action created by § 408(b)(1) of the ATSSSA;

hh.      Declaring that any claim made by defendant Racioppi to recover his claimed damages purportedly arising from alleged personal injuries, including respiratory injuries, purportedly caused by exposure to dust and debris at 130 Liberty Street created by the collapses of the World Trade Center Towers resulting from the terrorist related aircraft crashes of September 11, 2001 from plaintiffs Tully Construction, Tully Industries and Deutsche Bank Americas is subject to the original and exclusive jurisdiction of the United States District Court for the Southern District of New York pursuant to § 408(b)(3) of the ATSSSA;

ii.      Declaring that the only claim defendant Sanchez has to recover his claimed damages purportedly arising from alleged personal injuries, including respiratory injuries, purportedly caused by exposure to dust and debris created by the collapses of the World Trade Center Towers resulting from the terrorist related aircraft crashes of September 11, 2001 at, among other claimed locations, 1 Broadway, 111/113 Broadway, 200 Water Street, One World Financial Center. Two World Financial Center and Three World Financial Center from plaintiffs SPI and Logany is the exclusive federal cause of action created by § 408(b)(1) of the ATSSSA;

jj.      Declaring that any claim made by defendant Sanchez has to recover his claimed damages purportedly arising from alleged personal injuries, including respiratory injuries,

purportedly caused by exposure to dust and debris created by the collapses of the World Trade Center Towers resulting from the terrorist related aircraft crashes of September 11, 2001 at, among other claimed locations, 1 Broadway, 111/113 Broadway, 200 Water Street, One World Financial Center. Two World Financial Center and Three World Financial Center from plaintiffs SPI and Logany is subject to the original and exclusive jurisdiction of the United States District Court for the Southern District of New York pursuant to § 408(b)(3) of the ATSSSA;

kk.     Declaring that defendant Sferrazza may only recover damages from plaintiff the Port Authority and the City for his alleged personal injuries arising from the claimed accident at the site of the former World Trade Center on January 3, 2002 pursuant to the exclusive federal cause of action created by § 408(b)(1) of the ATSSSA;

ll.     Declaring that any claim brought by defendant Sferrazza seeking recovery from plaintiffs the City and the Port Authority for his alleged personal injuries arising from the claimed accident at the site of the former World Trade Center on January 3, 2002 is subject to the original and exclusive jurisdiction of the United States District Court for the Southern District of New York pursuant to § 408(b)(3) of the ATSSSA;

mm.     Declaring that the only claim defendant Urso has to recover his claimed damages purportedly arising from alleged personal injuries, including respiratory injuries, purportedly caused by exposure to dust and debris created by the collapses of the World Trade Center Towers resulting from the terrorist related aircraft crashes of September 11, 2001 both while working directly in the rescue, recovery, debris removal and clean-up activities that took place at the site of the former World Trade Center and while working at, among other claimed locations, One World Financial Center, Two World Financial Center, Four World Financial Center, Five World Financial Center, Seven World Financial Center, "other structures collectively known as the World Trade Center Site", and 78 through 86 Trinity Place (commonly known as the

38

"American Stock Exchange") from plaintiffs SPI, World Trade Center Properties, the Port Authority and the City is the exclusive federal cause of action created by § 408(b)(1) of the ATSSSA;

       nn.     Declaring that any claim made by defendant Urso to recover his claimed damages from plaintiffs SPI, World Trade Center Properties, the Port Authority and the City purportedly arising from alleged personal injuries, including respiratory injuries, purportedly caused by exposure to dust and debris created by the collapses of the World Trade Center Towers and other buildings resulting from the terrorist related aircraft crashes of September 11, 2001 both while working directly in the rescue, recovery, debris removal and clean-up activities that took place at the site of the former World Trade Center and while working at, among other claimed locations, One World Financial Center, Two World Financial Center, Four World Financial Center, Five World Financial Center, Seven World Financial Center, "other structures collectively known as the World Trade Center Site", and 78 through 86 Trinity Place (commonly known as the "American Stock Exchange") is subject to the original and exclusive jurisdiction of the United States District Court for the Southern District of New York pursuant to § 408(b)(3) of the ATSSSA;

       oo.     Declaring that the only claim defendant Valdez has to recover his claimed damages purportedly arising from alleged personal injuries, including respiratory injuries, purportedly caused by exposure to dust and debris created by the collapses of the World Trade Center Towers resulting from the terrorist related aircraft crashes of September 11, 2001 at, among other claimed locations, 1 Broadway, 111/113 Broadway, 120 Broadway, 200 Water Street, One World Financial Center and Two World Financial Center from plaintiffs SPI and Logany is the exclusive federal cause of action created by § 408(b)(1) of the ATSSSA;

pp.     Declaring that any claim made by defendant Valdez has to recover his claimed

damages purportedly arising from alleged personal injuries, including respiratory injuries,

purportedly caused by exposure to dust and debris created by the collapses of the World Trade

Center Towers resulting from the terrorist related aircraft crashes of September 11, 2001 at,

among other claimed locations, 1 Broadway, 111/113 Broadway, 120 Broadway, 200 Water

Street, One World Financial Center and Three World Financial Center from plaintiffs SPI and

Logany is subject to the original and exclusive jurisdiction of the United States District Court for

the Southern District of New York pursuant to § 408(b)(3) of the ATSSSA;

qq.     Declaring that the only claim defendant Vivar has to recover her claimed damages

purportedly arising from alleged personal injuries, including respiratory injuries, purportedly

caused by exposure to dust and debris created by the collapses of the World Trade Center

Towers resulting from the terrorist related aircraft crashes of September 11, 2001 at, among other

claimed locations, the "World Trade Center Site, Ground Zero, Fresh Kills Landfill and/or in the

area and buildings surrounding the World Trade Center Site" from plaintiffs SPI, the City,

Lefrak, Tully Construction, Tully Industries and World Trade Center Properties is the exclusive

federal cause of action created by § 408(b)(1) of the ATSSSA;

rr.     Declaring that any claim made by defendant Vivar to recover her claimed

damages purportedly arising from alleged personal injuries, including respiratory injuries,

purportedly caused by exposure to dust and debris created by the collapses of the World Trade

Center Towers resulting from the terrorist related aircraft crashes of September 11, 2001 at,

among other claimed locations, the "World Trade Center Site, Ground Zero, Fresh Kills Landfill

and/or in the area and buildings surrounding the World Trade Center Site" from plaintiffs SPI,

the City, Lefrak, Tully Construction, Tully Industries and World Trade Center Properties is

40

subject to the original and exclusive jurisdiction of the United States District Court for the

Southern District of New York pursuant to § 408(b)(3) of the ATSSSA; and

    ss.    Awarding to Plaintiffs such other and further relief as the Court may deem just

and proper.

Dated: New York, New York
       November 7, 2005

                       Respectfully submitted,

                       FLEMMING ZULACK WILLIAMSON ZAUDERER LLP
                       Attorneys for Plaintiffs Silverstein Properties, Inc., World Trade
                         Center Properties LLC, and The Port Authority of New York and
                         New Jersey

By: _____
                       Richard A. Williamson, Esq. (RW-3033)
                   One Liberty Plaza, 35th Fl.
                   New York, New York  10006
                   (212) 412-9500


                   LATHAM & WATKINS LLP
                   Attorneys for Plaintiff The City of New York


By: _____
                       James E. Tyrrell, Jr., Esq. (JT-6837)
                   One Newark Center, 16th Fl.
                   Newark, New Jersey  07101
                   (973) 639-1234

MOUND COTTON WOLLAN & GREENGRASS
Attorneys for Plaintiffs Tully Construction Co., Inc. and Tully
Industries, Inc. (as to defendants Arsenault and Racioppi)


By: _Mark J. Weber /tae_____
                Mark J. Weber (MW-6200)
One Battery Park Plaza
New York, New York 10004
(212) 804-4200


        --and--

MALAPERO & PRISCO, LLP
Attorneys for Plaintiff Tully Construction Co., Inc. (as to
    defendant Johnson)
485 Fifth Avenue
New York, New York 10017
(212) 661-7300


HARRIS BEACH, PLLC
Attorneys for Plaintiffs Hudson Towers Housing Co., Inc. and
    Lefrak Organization, Inc.


By: _Steven J. Rice /tae_____
                Steven J. Rice (SR-1934)
805 Third Avenue
New York, New York 10022
(212) 687-0100


McGIVNEY AND KLUGER, P.C.
Attorneys for Plaintiff Logany, LLC


By: _Richard Leff /tae_____
                Richard Leff (RL-2123)
80 Broad Street, 23rd Fl.
New York, New York 10004
(212) 509-3456

PITNEY HARDIN LLP
Attorneys for Plaintiffs Deutsche Bank Trust Company Americas
 (f/k/a Bankers Trust Company) and Deutsche Bank Trust
 Corporation (f/k/a Bankers Trust Corporation and Bankers
 Trust New York Corporation)


By:  *Benjamin E. Haglund/tac*
          Benjamin E. Haglund (BH-3350)
7 Times Square
New York, New York
(212) 297-5800
       -and-
PO Box 1945
Morristown, New Jersey 07962
(973) 966-6300

267023

Richard A. Williamson, Esq. (RW-3033)
FLEMMING ZULACKWILLIAMSON
  ZAUDERER LLP
One Liberty Plaza
New York, New York  10006
(212) 412-9500
Attorneys for Plaintiffs Silverstein Properties,
  Inc., World Trade Center  Properties LLC
  and The Port  Authority of New York and
  and New Jersey


James E. Tyrrell, Jr., Esq. (JT-6837)
LATHAM & WATKINS LLP
One Newark Center, 16th Fl.
Newark, New Jersey  07101
(973) 639-1234
Attorneys for Plaintiff The City of New
  York


Richard Leff (RL-2123)
McGIVNEY AND KLUGER, P.C.
80 Broad Street, 23rd Fl.
New York, New York 10004
(212) 509-3456
Attorneys for Plaintiff Logany, LLC


Benjamin E. Haglund (BH-3350)
PITNEY HARDIN LLP
7 Times Square
New York, New York 10036
(212) 297-5800
    -and-
PO Box 1945
Morristown, New Jersey 07962-1945
(973) 966-6300
Attorneys for Plaintiffs Deutsche Bank
  Trust Company Americas (f/k/a Bankers Trust
  Company) and Deutsche Bank Trust Corporation
  (f/k/a Bankers Trust Corporation and Bankers Trust New
  York Corporation)

Mark J. Weber (MW-6200)
MOUND COTTON WOLLAN &
  GREENGRASS
One Battery Park Plaza
New York, New York 10004
(212) 804-4200
Attorneys for Plaintiffs Tully Construction
  Co., Inc. and Tully Industries, Inc. (as to
  defendants Arsenault and Racioppi)


Steven J. Rice (SR-1934)
HARRIS BEACH, PLLC
805 Third Avenue
New York, New York 10022
(212) 687-0100
Attorneys for Plaintiffs Hudson Towers
  Housing Co., Inc. and Lefrak
  Organization, Inc.


Francesca Connolly (FC-2558)
MALAPERO & PRISCO, LLP
485 Fifth Avenue
New York, New York 10017
(212) 661-7300
Attorneys for Plaintiff Tully Construction
  Co., Inc. (as to defendant Johnson)